UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RYAN THRONEBERRY,

          Plaintiff,

v.

D. HAVENOR et al.,

          Defendants.

_____/

Case No. 2:19-cv-264

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette County,

Michigan. Plaintiff sues Warden Erica Huss, Deputy Warden James Alexander, Grievance Coordinator Glenn Caron, Lieutenant D. Havenor, Sergeant Unknown Johnston, and Corrections Officers Unknown Lawry and Unknown Shroderus.

### A. Plaintiff's name

Plaintiff alleges at the outset that he is a devout practitioner of the Odinic/Asatru faith. Plaintiff alleges that his religious practice may lie at the root of the problems he has experienced with Defendants. In keeping with his religious practice, he has taken the name Davidsson. Plaintiff asks the Court to recognize his name as Ryan Blake Davidsson-Throneberry.

MDOC policy directive 03.01.110 governs prisoner or parolee name changes. It is based on the fundamental requirement that "[a] prisoner or parolee may change his or her name only by court order." MDOC Policy Directive 03.01.110 (effective March 7, 2011).

Plaintiff added "Davidsson" to his surname for religious reasons. Prisoners have often attempted to compel the MDOC to recognize such religious name changes under the Free Exercise Clause of the First Amendment or under the Religious Land Use and Institutionalized Persons Act (RLUIPA). This Court and the Sixth Circuit Court of Appeals have repeatedly rejected those attempts because the administrative convenience of permitting prison officials to use one name for a prisoner is simply too important to effective prison administration. *See, e.g., Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir. 1980) ("'Prison administration presents unique difficulties and the burden imposed on the plaintiff in the instant case by the defendants' use of his non-Muslim name clearly is outweighed by the administrative difficulties and confusion which would confront prison officials in attempting to amend commitment papers of every prisoner who embraces the Islamic faith and changes his name.'"); *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999) ("Spies has no 'constitutional right to dictate how prison officials keep their prison records. As we see this issue, the present question of name change usage relates

to prison administration.'"); *Porter v. Caruso*, 479 F. Supp. 2d 687, 700 (W.D. Mich. 2007); *Piotrowski v. Michigan*, No. 1:12-cv-11, 2012 WL 652460 (W.D. Mich. Feb. 28, 2012).

Administrative convenience provides a compelling reason for this Court to follow suit. Plaintiff comes to the Court as an *in forma pauperis* prisoner. The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). In addition, the PLRA prevents a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. 28 U.S.C. § 1915(g).

The limits imposed by the PLRA can only be effectively enforced if the Court can specifically identify the individual prisoner before it. Plaintiff was prosecuted, convicted, and imprisoned by the State of Michigan under the name "Ryan Blake Throneberry"—his commitment name. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=896621. Even though MDOC policy **permits** the use of a different legal name, the same policy **requires** that all official MDOC forms and documents throughout a prisoner's incarceration and parole include the commitment name. MDOC Policy Directive 03.01.110 ¶ D. Because the Court is required to review MDOC documents to fulfill the Court's obligation under the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)(2), it is convenient and prudent to use the only name the MDOC will include on all of its documents: Plaintiff's commitment name. As a consequence, Plaintiff's request to have the Court use his religious name is denied.

### B. Defendant Shroderus

Plaintiff alleges that, during the afternoon of December 26, 2018, he was on his way to the Level V yard. He was wearing a winter cap around his neck as a scarf. Defendant

Shroderus singled Plaintiff out and gave Plaintiff a direct order to remove the hat from his neck. Plaintiff notes that he "questioned" Shroderus regarding why Plaintiff was being targeted and harassed. Plaintiff notes, nonetheless, that he complied with the order.

Even though Plaintiff complied, Defendant Shroderus wrote a misconduct report against Plaintiff for insolence. Plaintiff attaches the misconduct report to his complaint. Defendant Shroderus described the incident a little differently. While Plaintiff states he "questioned" the officer's harassment, Shroderus states "Prisoner Throneberry looked directly at me and [said], 'Fuck you, bitch, you're always on your hoe shit.'" (Misconduct Report, ECF No. 1-9, PageID.50.) None of Plaintiff's allegations contradict Defendant Shroderus's description of Plaintiff's statement.

Plaintiff alleges that Shroderus came to Plaintiff's cell twice after Plaintiff was found guilty of the misconduct. On January 4, 2019, at 4:50 p.m., Shroderus came to Plaintiff's cell to ensure that Plaintiff's electronics had been confiscated and stored in the Loss of Privileges Locker. Shroderus claimed to be "just doing his job," but, Plaintiff contends he was harassing Plaintiff because Shroderus should have been working the yard, not Plaintiff's housing unit.

Shroderus returned less than half-an-hour later. He told Plaintiff: "I've got no beef with you, I didn't even want to write the ticket, but you made me look bad in front of my fellow officers and Lieutenant. You guys need to learn you can't talk back to us." (Compl., ECF No. 1, PageID.4.) Shroderus also told Plaintiff that the lieutenant who witnessed Plaintiff's insolent statement to Shroderus contacted Defendant Lawry and directed Lawry to "tear Plaintiff's house up." (*Id.*, PageID.5.)

## C. Defendant Lawry

Shortly after the incident with Shroderus, Defendant Lawry conducted a non-routine search of Plaintiff's cell. Defendant Lawry issued a misconduct for destruction or misuse

4

of property. Plaintiff claims the misconduct was based on fabricated evidence; however, Plaintiff does not explain in his complaint the nature of the evidence or the fabrication.

Plaintiff attaches to the complaint the misconduct hearing report and his appeal of the determination that he was guilty. The report reveals that Plaintiff was accused of misusing an extension cord by cutting off one end and attaching a piece of metal between the wires. (Misconduct Hr'g Report, ECF No. 1-10, PageID.52.) Although a plea of not guilty was entered on Plaintiff's behalf, his appeal suggests he may have possessed the contraband property. Plaintiff writes "the ticket itself is a direct violation of the Equal Protection Clause of the 14th Amendment in [that] I received this misconduct and there are over a hundred other inmates in this facility alone with the exact same thing I was alleged to be in possession of, yet no misconducts were issued to those prisoners, only me." (Misconduct Appeal, ECF No. 1-10, PageID.51.)

Plaintiff alleges that when he returned to his cell after the search, he observed "bootprints on his bed, a bag of instant coffee spilled on his floor, shampoo squirted on his floor and bedspread, Plaintiff's freshly laundered clothes strewn throughout the cell, and miscellaneous personal/legal papers scattered throughout the cell; and Plaintiff's religious property/paperwork missing." (Compl., ECF No. 1, PageID.5.) When Plaintiff complained to Defendant Lawry, Lawry replied: "Well, that's what happens when you talk shit to corrections officers." (*Id*.) Lawry also told Plaintiff his religious property was in the Security Threat Group Coordinator's office. (*Id*.) Finally, Lawry told Plaintiff that he would "come in and destroy your cell every day I come to work, if you think you can question another corrections officer." (*Id*.)

Plaintiff notes that he and Lawry have a "history." During May of 2017, Lawry claimed that he found a weapon in Plaintiff's cell vent. Plaintiff reports that Lawry falsified documents in connection with the claim. Plaintiff was prosecuted, convicted, and sentenced to an

additional period of incarceration of 9 months to 2 years, 6 months.  But for that prosecution, Plaintiff would have already been discharged.

### D. Defendant Johnston

About one-half hour after Plaintiff spoke with Lawry, Defendant Johnston reviewed either one or both of the above-described misconducts with Plaintiff.[1]  During the review, Johnston noticed "what appeared to be torn sheets tied to the cell bars of his cell and affixed to an unknown object at the back of his cell."  (Misconduct Report, ECF No. 1-11, PageID.57.)  Johnston ordered Plaintiff to remove the "clothesline" from the cell bars.  Plaintiff responded: "I ain't doing shit."  (*Id*.)  Johnston issued Class II misconducts against Plaintiff for destruction/misuse of property and disobeying a direct order.

Plaintiff believes that Johnston only wrote the new misconducts because Plaintiff would not plead guilty to the Shroderus and/or Lawry misconducts, but instead insisted on a hearing.  Plaintiff's belief is based on a conversation with Sergeant Pucel (not a defendant).  Pucel reviewed the Johnston misconducts with Plaintiff.  He told Plaintiff: "See, this is what happens when you don't plead guilty and accept the days the first time we offer them."  (Compl., ECF No. 1, PageID.6.)

### E. Defendant Havenor

Defendant Havenor conducted the various misconduct hearings.  The reports on the Shroderus and Lawry misconducts indicate that an Officer Mayer verified that Plaintiff refused to

---

[1] Plaintiff contends that Defendant Johnston reviewed the Shroderus and the Lawry misconducts.  The documents he attaches to the complaint, however, suggest that Johnston only reviewed the Lawry misconduct with Plaintiff.  Defendant Johnston reports he was reviewing "a misconduct" with Plaintiff when he observed Plaintiff's "clothesline."  (Misconduct Report, ECF No. 1-11, PageID.57.)  The Shroderus misconduct report indicates that Sergeant Pucel reviewed the Shroderus misconduct with Plaintiff.  (Misconduct Report, ECF No. 1-9, PageID.50.)  Reading that report together with Plaintiff's allegations reveals that Pucel's review of the first misconduct occurred before Plaintiff was even aware of the Lawry misconduct.  (Compl., ECF No. 1, PageID.5.)

participate in the hearings.  (Misconduct Report, ECF No. 1-9, PageID.49; Misconduct Report, ECF No. 1-10, PageID.52.)  Plaintiff claims he was never offered the chance to participate in the hearings, that he did not refuse, and that he wanted to participate.

Plaintiff participated in the hearing on the Johnston misconducts.  He complained that he was never given a contraband removal slip.  (Misconduct Report, ECF No. 1-11, PageID.56.)  Plaintiff claims that without the contraband neither charge could be proven. (Misconduct Appeal, ECF No. 1-11, PageID.55.)  Plaintiff also notes that Defendant Havenor stated: "You're not gonna win here, I'm always gonna win."  (Compl., ECF No. 1, PageID.6.)

### F.   Defendant Alexander

Plaintiff alleges that he sent three misconduct appeal forms to Defendant Alexander.  Alexander, however, claimed he did not receive them until January 24, 2019. Alexander rejected the appeals as untimely.

### G.   Defendant Caron

Plaintiff was then transferred to the Michigan Reformatory.  Plaintiff's transfer made it difficult to pursue grievances regarding the alleged misconduct described above.  Plaintiff mailed grievances to Defendant Caron.  Caron refused to acknowledge one of the grievances—a grievance against Defendant Havenor for refusing to permit Plaintiff to participate in the Shroderus and Lawry misconduct hearings.  Plaintiff, therefore, grieved Defendant Caron.

### H.   Defendant Huss

Because Plaintiff was having problems with Defendant Caron processing Plaintiff's grievances, Plaintiff wrote a letter to Defendant Huss asking her to order Caron to comply with Plaintiff's requests regarding the Havenor grievance.  She never acknowledged receipt of Plaintiff's request and never responded to it.

## I. Plaintiff's claims

Plaintiff alleges that all of the Defendants have conspired to engage in a campaign of harassment, discrimination, and retaliation against him in violation of 18 U.S.C. §§ 241, 242. He contends that Defendant Shroderus unlawfully retaliated against Plaintiff for "seeking redress for a legitimate grievance." (Compl., ECF No. 1, PageID.9.) Plaintiff claims that Lawry also retaliated against Plaintiff for Plaintiff's "oral grievance" to Defendant Shroderus. (*Id.*, PageID.10.) Plaintiff also claims Defendant Lawry's search of Plaintiff's cell was an unreasonable search in violation of the Fourth Amendment.

Plaintiff claims Defendant Johnston unlawfully retaliated against Plaintiff because, according to Defendant Pucel, Plaintiff asserted his right to a hearing on the Shroderus and Lawry misconducts. According to Plaintiff, Defendant Havenor violated Plaintiff's right to due process by denying Plaintiff participation in two misconduct hearings and arbitrarily finding Plaintiff guilty of all four misconducts.

Plaintiff claims Defendant Alexander became aware of the illegal actions of Shroderus, Lawry, Johnston, and Havenor, but did nothing to correct it. Similarly, Plaintiff claims Defendant Caron is responsible for Defendant Havenor's violation of due process because Caron refused to process Plaintiff's grievance. Finally, Plaintiff contends that Defendant Huss is liable for the actions of all of the other Defendants because she failed to correct them.

### J. Relief

Plaintiff seeks hundreds of thousands of dollars in compensatory, nominal, and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     Claims for violation of 18 U.S.C. §§ 241, 242

Sections of 241 and 242 of Title 18, United States Code, define federal crimes relating to conspiracy against rights and deprivation of rights. Such statutes, however, do not provide a cause of action which would entitle Plaintiff to relief under § 1983. A civil rights action is not a proper vehicle for attempting to bring criminal charges. *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizen lacks standing to initiate criminal proceedings); *see also Associated Builders & Contractors v. Perry*, 16 F.3d 688, 692-93 (6th Cir. 1994) (private party lacks standing to compel the state to pursue criminal or civil actions). The Court therefore will dismiss Plaintiff's claims for violation of 18 U.S.C. §§ 241, 242.

### IV.     Respondeat superior

Plaintiff's allegations regarding Defendants Alexander and Huss depend in their entirety, and Plaintiff's allegations against Defendant Caron depend in part, on claims that those Defendants, as supervisors or grievance responders, failed to stop or correct the unlawful actions of the other Defendants. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Alexander or Huss have engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them. Plaintiff makes certain allegations of active unconstitutional behavior with respect to Defendant Caron. Those allegations are addressed below. Plaintiff's claim that Caron failed to stop or remedy Defendant Havenor's misconduct, however, does not allege active unconstitutional behavior on Defendant Caron's part; therefore, that claim will also be dismissed for failure to state a claim.

## V.     Due process

Plaintiff claims that Defendants denied him due process in connection with the misconduct hearings. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). The Sixth Circuit routinely has

held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct convictions.

Plaintiff also suggests that Defendants' purpose in pursuing the misconducts against him was to keep him at Security Level V.[2] The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id.*; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

---

[2] *See* Mich. Dep't of Corr., Policy Directives 05.01.130 ¶ B and 05.01.140 ¶ A (collectively describing the levels of prisoner security classification as Level I, Secure Level I, Level II, Level IV, Level V, and Administrative Segregation, with administrative segregation being the most secure).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter*, 69 F. App'x at 680 (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, his contention that Defendants wrongly kept him at Security Level V fails to state a claim.

## VI. First Amendment retaliation

Plaintiff claims that Defendants Shroderus and Lawry retaliated against him because Plaintiff questioned whether Shroderus was harassing Plaintiff. Plaintiff claims Defendant Johnston retaliated against him because Plaintiff refused to plead guilty to the Shroderus and Lawry misconducts but instead insisted on having hearings.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claims against Shroderus and Lawry fail at the first step. Plaintiff claims they acted based on his questioning of Shroderus's harassment of Plaintiff. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

But, a prisoner's right to complain does not give him carte blanche to say anything he wants. If a complaint falls within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct it is not protected by the First Amendment. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). *See also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language

was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Here, even Plaintiff characterizes his complaint as challenging Defendant Shroderus's authority and he does not deny the profane words that Shroderus attributes to Plaintiff. Therefore, Plaintiff's words were not protected. If Defendants Shroderus and Lawry retaliated against Plaintiff for those words, they did not run afoul of the First Amendment.

Plaintiff's statement to Defendant Johnston that Plaintiff would not plead guilty to the Lawry misconduct is protected conduct. Moreover, the consequences of the allegedly retaliatory adverse action—the Johnston misconducts—including the prospect of loss of privileges, amounts to adverse action. *Maben*, 887 F.3d at 266-67 (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")).[3]

Plaintiff's retaliation claim against Johnston fails at the third step. Plaintiff states conclusorily that Johnston wrote the misconducts because of Plaintiff's protected conduct (Compl., ECF No. 1, PageID.6), but he alleges no facts from which the Court might infer such a retaliatory intent. Instead, Plaintiff relies on statements by Sergeant Pucel: "[T]his is what . . . happens when you don't plead guilty . . . ." and "You['re] damn right [that these misconducts were retaliation]." (*Id*.) But, Pucel's intent or motivation does not show that Johnston had that intent or was so motivated. A person's statements or conduct are not evidence of retaliation if the person is not the decisionmaker taking the alleged adverse action. *Smith*, 250 F.3d at 1038; *Shehee*, 199 F.3d

---

[3] The *Maben* court noted the contrary holding in *Ingram*, 94 F. App'x at 273 (citing *Thaddeus-X*, 175 F.3d at 396-97) (14 days' loss of privileges does not constitute an adverse action), and, because *Maben* was a published opinion, it effectively overruled *Ingram*.

at 301.  Accordingly, Plaintiff has failed to state a retaliation claim against Defendant Johnston as well.

## VII.    Equal protection

Plaintiff makes passing reference to a claim under the Equal Protection Clause of the Fourteenth Amendment.  Petitioner's allegations suggest that Defendants may have taken all of these actions against him because he is an adherent of the Odinic/Aseratu faith.  Plaintiff states: "Plaintiff's religious beliefs are the only plausible explanation for the Defendants (collectively) to engage in a campaign of harassment, discrimination, and retaliation against the Plaintiff." (Compl., ECF No. 1, PageID.9.)  Plaintiff alleges no facts, however, that support his claim that Defendants were motivated by religious animus.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all

relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").  To be a similarly-situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).  Plaintiff never identifies a single similarly situated prisoner, which is fatal to his claim.  *Bertovich v. Vill. of Valley View*, 431 F. App'x 455, 458 (6th Cir. 2011) (Court affirmed dismissal of "class of one" equal protection claims where Plaintiff "[did] not point to any individual who was treated differently . . . ."); *see also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . ."); *Sanders v. City of Hodgenville*, 323 F. Supp. 3d 904, 911 (W.D. Ky. 2018) ("Sander's class-of-one claim fails as a matter of law . . . Sanders fails to identify any similarly situated individual who was treated differently."); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) (""Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

    Although Plaintiff adequately alleges how he has been treated, he only alleges that others have been treated differently with respect to the Lawry misconduct.  Thus, he has failed to allege disparate treatment for any of the other Defendants' alleged actions.  Moreover, with regard

to the Lawry misconduct, he fails to allege that the prisoners who were treated differently were similar in all relevant respects. Indeed, his allegations regarding Defendant Lawry's treatment of other prisoners are hopelessly conclusory. Plaintiff simply claims that there exists a category of similarly situated prisoners who were treated differently. Facing comparable, but slightly less conclusory, allegations in *Rondigo L.L.C.*, 641 F3d at 673, the Sixth Circuit determined:

> [P]laintiffs' allegations that [there exists another person who] is similarly situated and that his more favorable treatment by defendants evidences unlawful discrimination are exposed as little more than "legal conclusions couched as factual allegations" and need not be accepted as true under Rule 12(b)(6) scrutiny. *See Twombly*, 550 U.S. at 555. Plaintiffs' factual allegations fail to "raise the right to relief above the speculative level." *Id.* They fail to warrant a "reasonable inference that [defendants are] liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949. When the allegations are viewed in light of the exhibits attached to the complaint, they fall far short of making out a "plausible claim of entitlement to relief" under either equal protection theory. *See id.*

*Rondigo L.L.C.*, 641 F.3d at 684. Plaintiff's allegations here are no more than legal conclusions. He has failed to make a plausible claim of entitlement to relief for an equal protection violation.

## VIII. Claims related to the weapons possession conviction are barred

Plaintiff refers to Defendant Lawry's alleged fabrication of a weapons possession charge. Plaintiff was convicted of that offense.

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Plaintiff does not directly challenge the fact or duration of his confinement; however, a claim for damages against Lawry for fabricating evidence of weapons possession, if successful, would necessarily call into question Plaintiff's conviction. To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional

rights, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). Therefore, any claim against Lawry for fabricating evidence of Plaintiff's weapons possession is barred under *Heck* until his criminal conviction has been invalidated.

## IX. Right to a grievance procedure

Plaintiff claims that Defendant Caron interfered with the processing of his grievances. Plaintiff suggests that Caron may have thereby violated Plaintiff's due process rights or his First Amendment rights.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim,* 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Caron's conduct did not deprive him of due process.

Plaintiff's claim fares no better under the First Amendment. The amendment stops the government from generally prohibiting expressions in the form of petitions for redress and

from imposing sanctions on one who petitions for redress. *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979). In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment. A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials."). Thus, Plaintiff has a First Amendment right to file grievances against prison officials, *Herron v. Harrison*, 203 F. 3d 410,415 (6th Cir. 2000), but the amendment does not require the government to consider, respond to, or grant relief on that grievance.

Plaintiff's allegations reveal that he is trying to expand his right to petition for redress—to complain about prison officials—into a right to compel those officials to listen, or at least to follow their own procedures. The protections afforded by the right to petition are not that broad. It is a right of expression, not a right to process following the expression. "[A] state has no federal due process obligation to follow all of its own grievance procedures . . . ." *Carlton v. Jondreau*, 76 F. App's 642, 644 (6th Cir. 2003). An inmate does not have a constitutionally protected interest in a jail or prison grievance procedure or the right to an effective procedure. *Walker*, 128 F. App'x at 445; *Argue*, 80 F. App'x at 430. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300.

It is true that a prisoner must exhaust available administrative remedies before bringing a civil rights claim in court, *see* 42 U.S.C. § 1997e(a), but even assuming that Caron improperly prevented Plaintiff from pursuing a particular grievance, Caron could not have prevented Plaintiff from pursuing a civil rights claim based on an issue raised in that grievance. If Caron thwarted Plaintiff's ability to use the grievances process, then the process was not "available" to Plaintiff for that claim, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001). Thus, Plaintiff's suggestion that Defendant Caron violated Plaintiff's First Amendment rights by failing to properly process his grievances is meritless.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  January 16, 2020                    /s/ Janet T. Neff
                                            Janet T. Neff
                                            United States District Judge